664 A.2d 854

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Samuel F. KENNEY.

Misc. Docket (Subtitle BV) No. 25, Sept. Term, 1994.

Court of Appeals of Maryland.

Sept. 11, 1995.

Melvin Hirshman, Bar Counsel, and Raymond A. Hein, Assistant Bar Counsel, for Attorney Grievance Com'n of Maryland, for petitioner.

Samuel F. Kenney, Towson, pro se.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

On October 19, 1994, the Attorney Grievance Commission charged Samuel F. Kenney (Kenney) with violations of Maryland Rules of Professional Conduct 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.15 (Safekeeping Property), 8.1 (Misconduct), 8.4 (Misconduct), Maryland Rules BU7 and BU9, as well as Maryland Code (1989), Business Occupations and Professions Article, § 10–306. Pursuant to Maryland Rule BV9b, this Court referred the matter to the Honorable Dana M. Levitz of the Circuit Court for Baltimore County to make findings of fact and conclusions of law.

On March 3, 1995, after an evidentiary hearing, Judge Levitz made the following findings which he summarized.

## I.

### *FINDINGS OF FACT*

"The Court finds the following facts have been proven by clear and convincing evidence, pursuant to Maryland Rule BV10(d):

The Respondent was born on December 15, 1928. He is presently 66 years of age. He was admitted to the Bar of Maryland on October 25, 1957. The Respondent had maintained an office for the practice of law for in excess of 25 years. The Respondent has a history of alcoholism, going back at least 25 years. Since at least 1981, the Respondent's alcoholism has been of concern to members of the Bar; however, the Respondent was able to function in a

reasonably competent fashion until he began consuming excessive quantities of alcohol, beginning in the late 1980's. From 1989 until 1993 the Respondent was consuming approximately one quart of alcohol per day. The Respondent severely neglected his legal practice and obligations as an attorney in the late 1980's, continuing until August of 1993. This Court is clearly convinced that the Respondent's excessive consumption of alcohol impaired his judgment. This Court is convinced that the Respondent has been sober and alcohol free since August of 1993. Further, this Court is convinced that Respondent is sincerely embarrassed and remorseful for his actions."

## THE ESTATE OF DONALD J. PETERS

"The Court finds the following facts by clear and convincing evidence.

1. In February, 1992, the Respondent was appointed Personal Representative of the Estate of Donald J. Peters, Sr., who died on December 5, 1991. Donald Peters had been a close personal friend of the Respondent for many years. In fact, the Respondent was Godfather to one of the deceased's three children. The Respondent was nominated to serve as Personal Representative of Donald J. Peters, Sr. estate in a will executed on April 19, 1968.

2. From February, 1992 until the Respondent was replaced as Personal Representative in July of 1993, the Respondent neglected his duties as Personal Representative in various respects. Specifically, the Respondent failed to file an Information Report, failed to file a timely Inventory, failed to file the First Administration Account in a timely manner, failed to respond to several notices from the Register of Wills, requiring him to show cause why he had not filed the appropriate documents.

3. In February of 1992, the Respondent opened an estate bank account into which he deposited funds that were assets of the Peters estate.

4. Beginning almost immediately after the estate account was opened, the Respondent made a series of unauthorized disbursements to himself by issuing checks payable to himself or to 'cash' from the estate account. The Respondent made 32 such disbursements, totaling $38,800.00. These disbursements were made from February 27, 1992, until September 9, 1992.

5. These disbursements were used to pay personal and office expenses of the Respondent.

6. The Respondent made these disbursements to himself without the knowledge or consent of the estate beneficiaries, and without seeking approval of the Orphans' Court for Baltimore County, or any other court.

7. The estate beneficiaries became dissatisfied with the Respondent's handling of their father's estate and sought other counsel in February of 1993.

8. The Respondent was requested to resign as Personal Representative and to allow Michael Peters, the deceased's son, to serve as Personal Representative. Michael Peters was a Certified Public Accountant practicing in Maryland.

9. The Respondent did not resign until June 17, 1993, the day of a hearing scheduled before the Orphans' Court on the beneficiaries' Motion to Remove Respondent as Personal Representative.

10. The Respondent admitted to the beneficiaries' new attorney, Michael May, Esquire, that he had made unauthorized withdraws from the estate account in the amount of $38,800.00 and used the funds for his personal purposes.

11. In April, 1993, the Respondent sent checks to Michael Peters, one of the beneficiaries, and the proposed new Personal Representative, in the amount of $40,974.01. This money was intended to reimburse the estate for the unauthorized withdraws of the Respondent, plus interest."

## CONCLUSIONS OF LAW

"This Court concludes that Respondent has violated various provisions of the Maryland Lawyers Rules of Profes-

sional Conduct as adopted by Maryland Rule 1230. Specifically, the Respondent has violated Rule 1.1 COMPETENCE. The Respondent's failure to file the necessary estate papers in a timely fashion is a violation of both Rule 1.1 COMPETENCE and Rule 1.3 DILIGENCE. In addition, the Respondent has violated Rule 1.4 COMMUNICATION. Specifically, the Respondent did not keep his clients reasonably informed regarding the status of the estate. The Respondent failed to promptly comply with reasonable requests for information about the estate. The Respondent did not communicate with the beneficiaries of the estate regarding his withdrawal of estate property for his own purposes. In addition, the Respondent has violated Rule 1.15 of the Rule of Professional Conduct. This rule relates to safekeeping property. It goes without saying, that the Respondent's unauthorized withdrawal of $38,800.00 of estate property from the estate account and using said funds for his personal use is a violation of this rule.

Also, the Respondent has violated Rule 8.4 MISCONDUCT. The actions of Respondent amount to the crime of theft. It should be noted that Respondent was convicted in a court trial before the Honorable Barbara K. Howe on February 14, 1995, of the crime of theft in criminal case No. 84 CR 2444. The charge against the Respondent involved the theft of $38,800.00 from the Estate of Donald J. Peters. A sentencing date of March 20, 1995, has been scheduled.

Finally, this Court concludes that the Respondent violated Maryland Code, Section 10–306 of the Business Occupations and Professions Article. That section provides: 'A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.[']"

## COMPLAINT OF ROBERT F. LONG

"This Court finds the following facts by clear and convincing evidence.

1. The Respondent represented Robert and Christina Long in connection with their claims arising from a 1987 motor vehicle accident. The Respondent was a long time friend of the Longs. Following their automobile accident, the Longs moved from Maryland to Florida.

2. On February 12, 1993, West American Insurance Company issued a settlement draft in the amount of $16,-000.00 made payable to Mr. and Mrs. Long and to the Respondent as their attorney. The draft was sent to the Respondent.

3. By letter dated February 16, 1993, the Respondent sent the settlement draft, along with the release, to be signed by the Longs and returned to the Respondent. The Respondent stated in his letter that he would deposit the draft in an escrow account and disburse the appropriate amount to the Longs after seven banking days.

4. The Longs signed the settlement draft and returned it to the Respondent as directed.

5. The Respondent deposited the settlement draft into his escrow account on February 22, 1993. He did not disburse the Long's portion of the settlement as promised in his letter.

6. The Respondent misappropriated the Long's settlement proceeds. He, in fact, did not maintain the funds in [a] trust account for his clients, but used the funds for his personal needs.

7. The Longs filed a complaint with the Attorney Grievance Commission.

8. Subsequent to that Complaint being filed, the Respondent paid to the Longs $17,000.00. The Respondent paid to the Longs the entire amount of the settlement, plus interest, in June of 1993."

## CONCLUSIONS OF LAW

"It is the conclusion[ ] of this Court that the Respondent violated various provisions of the Maryland Lawyers Rules of Professional Conduct while representing Robert and

Christina Long. Specifically, the Respondent violated Rule 1.3 DILIGENCE. The Respondent did not diligently and promptly forward the settlement funds and make disbursements as he was required to. Further, he violated Rule 1.4 COMMUNICATION. Specifically, the Respondent failed to keep the Longs reasonably informed as [to] the status of their settlement funds. He did not inform the Longs that he would use their settlement proceeds for his own purposes. In addition, the Respondent violated Rule 1.15 SAFEKEEPING PROPERTY and Rule 8.4 MISCONDUCT. The Respondent misappropriated the $16,000.00 settlement to his own use. It is difficult to see any substantive difference between the theft that occurred in the Peters Estate matter and the misappropriation which occurred in the Long case.

It goes without saying, that the Respondent's conduct also violated Maryland Code Section 10–306 of the Business Occupations and Professions Article (1989). The use of this $16,000.00 which was entrusted to the Respondent's possession for the benefit of the Longs, without their consent, was a violation of this section."

## FAILURE TO PAY WITHHOLDING TAXES

### BC Docket No. 94–78–3–8

"The Court finds the following facts by clear and convincing evidence.

1. Over a period from 1989 through 1992 the Respondent failed to withhold and remit to the Comptroller of the Treasury of the State of Maryland income taxes that should have been withheld from his employees' wages, pursuant to Maryland Code 10–906(a) of the Tax–General Article (1988 and 1994 Supplement).

2. That Respondent failed to hold such taxes in trust for the State as required by Section 10–906(b) [of] the Tax–General Article.

3. That the Respondent failed to maintain a separate ledger account for withholdings as required by Section 10–906(c) of the Tax–General Article.

4. That the Respondent failed to comply in other respects with the income tax withholding requirements of the Tax–General Article."

## CONCLUSIONS OF LAW

"The Court concludes that the Respondent's failure to comply with the income tax withholding provisions of the Tax–General Article violated Rule 8.4 of the Maryland Lawyers Rules of Professional Conduct. Failing to file timely income tax withholding reflects adversely on a lawyer's trustworthiness."

## ADDITIONAL MISCONDUCT DISCOVERED THROUGH BAR COUNSEL'S INVESTIGATION

"The Court find[s] that the following facts have been proven by clear and convincing evidence.

1. The Respondent conducted all of his banking transactions since approximately 1988 out of a single account designated as his attorney escrow account.

2. The Respondent used this escrow account for transactions related to client funds held in trust, expenses related to his law practice, payroll expenses and personal matters.

3. The Respondent regularly commingled client funds with his personal and business funds. He failed to maintain clients' funds in trust, drew checks made payable to cash and otherwise failed to maintain the account in compliance with Maryland BU Rules for a period of several years, dating back to at least 1989.

4. The [R]espondent used this escrow account as his personal checking account and regularly misappropriated clients' funds deposited in this account for his personal use.

5. There was no attempt to keep the clients' funds separate from those of the Respondent."

## CONCLUSIONS OF LAW

"Accordingly, this Court concludes that the Respondent has violated Rule 1.15 of the Rules of Professional Conduct. Specifically, the Respondent has failed to hold the property of his clients in an account separate from the lawyer's own funds. Additionally, the Respondent has violated BU7 and BU9 of the Maryland Rules of Procedure. Specifically, the Respondent has commingled his funds with the funds of his clients. He has deposited in his attorney escrow account his personal property and has made no attempt to segregate his funds from the funds he held in trust for clients. Rule BU9 was clearly violated by the Respondent's misappropriating funds of his clients which were being held in trust. Finally, Rule BU9 was violated by issuing checks made payable to 'cash' from the escrow account."

## CONCLUSION

"It is this Court's view that the effect of the Respondent's abuse of alcohol represents a true tragedy. It was difficult for this Court not to feel a degree of compassion for the Respondent. Nevertheless, there is no question that the Respondent violated in a most serious way his duty to his clients, the public as a whole, and the Bar of this State."

The circuit court later issued the following Supplemental Findings of Fact and Conclusions of Law:

"This Court finds the following facts have been proven by a preponderance of the evidence:

The Respondent's alcoholism was, to a substantial extent, 'the responsible, the precipitating, the root cause' of the Respondent's misappropriation of trust and client funds. This Court is convinced that but for the Respondent's excessive alcohol intake over a period of years, the Respondent would not have misappropriated funds.

The Court finds the following facts have been proven by clear and convincing evidence:

The Respondent failed to respond to lawful demands for information from Bar Counsel. The Respondent did not

provide records in a timely fashion, nor did the Respondent comply with other lawful discovery requests as required by law. Nevertheless, this Court finds that there was no intentional effort on the part of the Respondent to mislead or thwart the investigation of the Attorney Grievance Commission. This Court finds as a fact that the Respondent's failure to provide records as requested was more a function of the Respondent's poor record keeping practices developed over the years he was drinking heavily."

## CONCLUSIONS OF LAW

"In addition to the previous conclusion of law this Court concludes that the Respondent technically violated Rule 8.1(b) of the Rules of Professional Conduct by his failure to timely respond to Bar counsel's requests for his escrow account records and other information."

## II.

In determining the appropriate sanction for an offending attorney, we have recognized that "the severity of the sanction to be imposed is dependent on the facts and circumstances of each case" and the Court "may consider facts in mitigation as well as an attorney's prior misconduct and any previous disciplinary sanctions which may have been imposed." *Attorney Grievance Comm'n v. Pollack*, 279 Md. 225, 238, 369 A.2d 61, 68 (1977). When an attorney has misappropriated client funds, we have consistently held that "[m]isappropriation of funds by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Attorney Griev. Comm'n v. Bakas*, 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991) (citing *Attorney Griev. Comm'n v. Ezrin*, 312 Md. 603, 608–09, 541 A.2d 966, 969 (1988)); *see also Attorney Griev. Comm'n v. Flynn*, 283 Md. 41, 45, 387 A.2d 775, 777 (1978) (noting that "absent compelling extenuating circumstances ... when an attorney engages in conduct which entails dishonesty ... that attorney will be disbarred as a matter of course to protect the public from

being victimized by his further dishonesty") (citations omitted).

In assessing the appropriate sanction, we have considered facts in mitigation which serve to lessen the sanction otherwise given. We have, therefore, found that a less severe sanction than that ordinarily dictated may be appropriate when an attorney is able to establish the existence of compelling extenuating circumstances.[1] *See Attorney Griev. Comm'n v. Bailey,* 294 Md. 526, 536, 451 A.2d 1210, 1214 (1982) (citing *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 553, 318 A.2d 811, 817 (1974)); *Bar Ass'n of Balto. City v. Siegel,* 275 Md. 521, 525, 340 A.2d 710, 712 (1975).

One such mitigating factor is alcoholism. In the case of alcoholism, we have determined that "problems attributed to alcohol addiction may present circumstances sufficient to warrant [a] sanction less severe than disbarment." *Attorney Griev. Comm'n v. Miller,* 301 Md. 592, 608, 483 A.2d 1281, 1290 (1984); *see also Attorney Griev. Comm'n v. Willemain,* 297 Md. 386, 395, 466 A.2d 1271, 1275 (1983). For this reason, "[w]e have looked at the shortcomings of attorneys in a somewhat different light where we have concluded that the acts giving rise to the charges against the attorney have resulted to a substantial extent from the physical and mental maladies the attorney was suffering, particularly where alcoholism was involved." *Willemain,* 297 Md. at 395, 466 A.2d at 1275. In order for alcoholism to mitigate the attorney's conduct and warrant a sanction less severe than disbarment, we have held that the evidence before the hearing judge must

---

1. In *Bar Ass'n of Balto. City v. Siegel,* 275 Md. 521, 340 A.2d 710 (1975), this Court considered the nature of "compelling extenuating circumstances" which would warrant a lesser sanction for an attorney who was convicted of a crime involving moral turpitude. We held that "compelling extenuating circumstances":

   "[A]re only those which may cause this Court to view the conviction in a light which tends to show that the respondent's illegal act, committed in violation of a criminal statute, resulted from intensely strained circumstances or that the magnitude and the nature of the crime are not so severe as to compel disbarment."

   *Siegel,* 275 Md. at 527, 340 A.2d at 713.

be legally sufficient to establish a "causal relationship between the misconduct and the alcoholism." *Attorney Griev. Comm'n v. White,* 328 Md. 412, 418, 614 A.2d 955, 959 (1992).

In cases of misappropriation of client funds where alcohol is implicated we have stated that:

"[A] sanction less severe than disbarment may be imposed if the evidence discloses that the alcoholism, to a substantial extent, was the responsible, the precipitating, the root cause of the misappropriation. More, therefore, is required to establish the requisite causal relationship than a mere recitation of the attorney's life style and lengthy history of alcoholism."

*White,* 328 Md. at 419, 614 A.2d at 959. We have therefore given a less severe sanction to attorneys found guilty of commingling or misappropriating client funds where there has been a finding that alcoholism was the cause of the attorney's misconduct. *See Miller, supra; Willemain, supra; Attorney Griev. Comm'n v. Finlayson,* 293 Md. 156, 442 A.2d 565 (1982); *Flynn, supra; Attorney Grievance Comm'n v. Cooper,* 279 Md. 605, 369 A.2d 1059 (1977). Where the addiction has been proven " 'we have ordered indefinite suspension when the addiction was to a substantial extent responsible for the conduct of the attorney.' " *White,* 328 Md. at 418, 614 A.2d at 958 (quoting *Miller,* 301 Md. at 608, 483 A.2d at 1290); *see also Attorney Griev. Comm'n v. Aler,* 301 Md. 389, 483 A.2d 56 (1984); *Attorney Griev. Comm'n v. Nichols,* 301 Md. 172, 482 A.2d 499 (1984).

In *White,* James J. White, III was charged with violations of the Maryland Rules of Professional Conduct and Md. Code (1989), Business Occupations and Professions Art., § 10–306 to 307. The charges arose out of White's withdrawal of money from a client's trust account for his personal use which White replaced prior to charges being filed by the Attorney Grievance Commission. At an evidentiary hearing on the charges, both White and Richard B. Vincent, Director of Lawyer Counseling for the Maryland State Bar Association, testified that White had a thirty-year history of alcoholism and because

of White's alcoholism his thinking was "alcoholically impaired." *White*, 328 Md. at 420, 614 A.2d at 959. White testified that he rationalized his actions as "borrowing" and Vincent stated that this rationalization was consistent with "alcoholic thinking," and acknowledged that White probably knew what he was doing when he misappropriated funds. *White*, 328 Md. at 415, 614 A.2d at 957. White also testified that he had practiced law for almost thirty years without any disciplinary charges being filed against him and while "in the throes of severe alcoholism, [he] misappropriated funds which he held in trust." *White*, 328 Md. at 416, 614 A.2d at 957.

Although the hearing judge did not make any factual finding on a causal relationship between the theft of the money and White's alcoholism, we found that a remand was unnecessary because of the dearth of substantive evidence to support any claim that there was a causal relationship between White's misuse of the client's funds and his alcoholism. Substantive evidence of mitigation was "woefully absent." *White*, 328 Md. at 420–21, 614 A.2d at 960. We held that the testimony that White's thinking was alcoholically impaired to the extent that he rationalized his behavior as "acceptable" was insufficient mitigation to impose a sanction less than disbarment. *Id.* Thus, we ordered that White be disbarred from the practice of law. *Id.*

In contrast to the case in *White* where the requisite causal connection between White's alcoholism and his misappropriation of client funds was "woefully absent," Judge Levitz in the instant case made a specific finding that Kenney's alcoholism "was, to a substantial extent, 'the responsible, the precipitating, the root cause' of [Kenney's] misappropriation of trust and client funds." Because Judge Levitz found that the requisite causal relationship was present between Kenney's misappropriation of client funds and his alcoholism, a sanction less severe than disbarment may be appropriate. *See White*, 328 Md. at 419, 614 A.2d at 959. Thus, consistent with our prior decisions, we hold that an indefinite suspension is the proper sanction in the instant case. In so holding, we wish to point out our admonishment in *Flynn*, that "[l]est ... anyone

. . . glean from our action here a softening of our revulsion for misuse by an attorney of his client's funds, we hasten to add that there is no end to a suspension imposed in these circumstances except upon a showing, by clear and convincing evidence amounting to a moral certainty, that the malady has been removed and rehabilitation is complete so that the illegal and improper acts will never be repeated." 283 Md. at 46–47, 387 A.2d at 778.

### III.

While following precedent and ordering an indefinite suspension in the instant case, we caution members of the bar that in the future, we believe that, absent truly compelling circumstances, alcoholism should not provide mitigation where an attorney has been found to have committed a violation which would ordinarily warrant disbarment. Because of our need to protect the public, the severity of such violations should not be denigrated because of an attorney's alcoholism.

We note that numerous other jurisdictions have found that alcoholism will not suffice to mitigate the sanction of disbarment. In *Carter v. Ross*, 461 A.2d 675 (R.I.1983), the Supreme Court of Rhode Island disbarred an attorney for the misappropriation of more than $33,890.34 of client funds despite the recognition that the attorney was an alcoholic. In so doing, the court noted that the "primary purpose of disciplinary proceedings are to protect the public and to nurture public confidence in the bar." *Ross*, 461 A.2d at 676. In finding disbarment to be the appropriate sanction, the court stated:

"We . . . are convinced that continuing public confidence in the judicial system and the bar as a whole requires that the strictest discipline be imposed in misappropriation cases. Thus, even though we wish the respondent well in any effort he may make to rehabilitate himself, we believe that he has failed to show cause why he should not be disbarred. Alcoholism can create tragedy in all occupations and professions, but this court is charged with the responsibility of

doing everything within reason to safeguard a client's funds from an unfit attorney, whatever the cause of his unfitness."

*Id.*

In *The Florida Bar v. Knowles*, 500 So.2d 140 (Fla.1986), the Supreme Court of Florida disbarred an attorney for the misappropriation of client trust funds despite Knowles's alcoholism. Knowles had been suspended from the practice of law when the misappropriations were discovered and he was subsequently charged with eight counts of grand theft, to which he pleaded no contest. In ordering disbarment, the court stated:

> "Although we recognize that alcoholism was the underlying cause of respondent's misconduct, it cannot constitute a mitigating factor sufficient to reverse the referee's recommendation to disbar under the facts in this case. The misappropriations occurred continuously over a period of approximately four years. During this time, respondent continued to work regularly. His income did not diminish discernably as a result of his alcoholism. ... Under these circumstances, we believe respondent should be disbarred regardless of his defense of alcoholism."

*Knowles*, 500 So.2d at 142. *See also The Florida Bar v. Shuminer*, 567 So.2d 430 (Fla.1990) (holding alcohol and cocaine addiction did not mitigate finding of disbarment due to seriousness of offenses).

In *In re Eads*, 303 Or. 111, 734 P.2d 340 (1987), the Supreme Court of Oregon disbarred an attorney for the misappropriation of client funds and other violations despite the attorney's addiction to drugs and alcohol during the time the violations were committed. The court noted that the attorney knew that his misappropriation were wrongful and therefore acted intentionally, despite his addictions. *Eads*, 303 Or. 111, 734 P.2d at 346. The court noted that it had, on occasion, been more lenient in disciplining attorneys whose neglect of legal duties was the result of a physical or emotional disability for which the attorney had sought rehabilitation. The court noted, however:

"The significant difference between these cases and the present one is the gravity of the misconduct. As these cases indicate, we have imposed a period of probation in addition to suspension in cases of less serious violations that would not normally require disbarment. In cases where disbarment is the norm, we hold that drug or alcohol dependency will not reduce that sanction."

*Eads,* 734 P.2d at 348.

In *Matter of Hayes,* 467 N.E.2d 20 (Ind.1984), the Supreme Court of Indiana disbarred an attorney for misappropriating and commingling client funds. The court accepted the hearing officer's finding that the attorney was a diagnosed alcoholic who had subsequently sought treatment and that the attorney's alcoholism had adversely affected his moral and professional judgment. Nevertheless, the court noted that the attorney's alcoholism did "not vitiate the effects of professional misconduct." *Hayes,* 467 N.E.2d at 22. *See also In re Ewaniszyk,* 50 Cal.3d 543, 268 Cal.Rptr. 176, 788 P.2d 690 (1990) (disbarring attorney for felony convictions stemming from misappropriation of funds despite alcohol and drug addiction); *In re Laury,* 300 Or. 65, 706 P.2d 935 (1985) (disbarring attorney for misappropriation and commingling of funds despite alcoholism because of the severity of his violations and because the evidence indicated that the attorney had the cognitive ability to know that what he was doing was wrong). *See generally* Gregory G. Sarno, Annotation, *Mental or Emotional Disturbance as Defense to or Mitigation of Charges Against Attorney in Disciplinary Proceeding,* 26 A.L.R.4th 995, 1029–34 (1983, Sept. 1994 Supp.) (discussing cases disbarring attorneys for ethical violations despite alcoholism or substance abuse).

Courts have also refused to permit alcoholism to serve as mitigation where alcoholic attorneys have been found to have committed other serious offenses aside from misappropriation and commingling of client funds. *See* 26 A.L.R.4th at 1029–34. In *In re Scott,* 52 Cal.3d 968, 277 Cal.Rptr. 201, 802 P.2d 985 (1991), a municipal court judge was disbarred after pleading guilty to possession of illegal drugs and after presiding over

the arraignment of a defendant from whom he had previously purchased drugs, at which proceeding the judge authorized the reduction of the defendant's bail. Findings of fact by the hearing panel indicated that the judge had been a continuing drug addict and alcoholic prior to seeking election as a judge and that subsequent to his conviction, he had made substantial efforts to rehabilitate himself. While the court recognized the mitigating factors of his addiction and subsequent rehabilitation, including making restitution, the court nonetheless held that disbarment was appropriate for such acts of moral turpitude, stating:

"[U]ltimately 'our task is to balance these unique facts against the need to protect the public, bench, and bar from further injury.' Under [the applicable disciplinary rule], when a finding of 'moral turpitude' is made, 'the court ... shall enter an order disbarring the attorney or suspending him or her from practice for a limited time, according to the gravity of the crime and the circumstances of the case....' Under the guidelines embodied in [the rule], an attorney convicted of a felony such as petitioner's should be disbarred unless 'the most compelling mitigating circumstances clearly predominate.'

On this record, we cannot conclude that the mitigating factors 'clearly predominate' over the gravity of the circumstances underlying petitioner's felony convictions and his prior long-standing breach of the public trust and confidence which his community placed in him." (Citations omitted).

*Scott,* 277 Cal.Rptr. at 208, 802 P.2d at 992.

We find the reasoning of these cases to be persuasive and caution that in the future, absent truly compelling circumstances, alcoholism will not be permitted to mitigate where an attorney commits a violation of ethical or legal rules which would ordinarily warrant disbarment.[2] Severe sanctions are

---

**2.** The District of Columbia Court of Appeals warned members of its bar of a prospective change in sanctions in *In re Hines,* 482 A.2d 378, 386 (D.C.Ct.App.1984) (providing for a two-year suspension for the offend-

necessary to protect the public from being victimized from any further dishonesty on the part of the attorney. We do, however, recognize that alcoholism is a serious medical condition and we will be more sympathetic to attorneys who recognize their need for assistance and seek to rehabilitate themselves before their transgressions are discovered. Nonetheless, we believe that when violations ordinarily warranting disbarment are found, our duty to protect the public is strong and we cannot permit alcoholism to alleviate an attorney's responsibility to recognize the wrongfulness of his or her actions and to honor his or her commitments to his or her clients.

For the above stated reasons, Samuel F. Kenney will be suspended indefinitely from the practice of law.

*IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT INCLUDING THE COSTS OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST SAMUEL F. KENNEY.*

---

ing attorney but noting that in misappropriation cases involving more than simple negligence, "we take this occasion to notify the bar that in future misappropriation cases disbarment will ordinarily be the sanction imposed by this court").