693 A.2d 806

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Douglas T. SACHSE.**

**Misc. Docket (Subtitle BV) No. 5, Sept. Term, 1996.**

Court of Appeals of Maryland.

May 9, 1997.

580

Melvin Hirshman, Bar Counsel, and Raymond A. Hein, Assistant Bar Counsel, for Attorney Grievance Commission of Maryland, Petitioner.

Philip N. Tirabassi, Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

KARWACKI, Judge.

The Review Board of the Attorney Grievance Commission directed Bar Counsel to file charges against Douglas T.

Sachse for violating several Rules of Professional Conduct stemming from his actions as trustee of a testamentary trust. Specifically, the Petition for Disciplinary Action alleged that, in approving the issuance and negotiation of five checks drawn upon the corpus of the trust, Sachse had failed to provide competent representation, Rule 1.1 of the Maryland Rules of Professional Conduct, had represented interests in conflict with those owed to the trust, Rule 1.7(b), and had engaged in professional misconduct, Rule 8.4(a) and (c). The Petition further alleged that Sachse had made a false statement of material fact, Rule 8.1(a), and had violated Maryland Code (1989, 1995 Repl.Vol.), § 10–306 of the Business Occupations and Professions Article (BP), which provides: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

Pursuant to Maryland Rule BV9,[1] we transmitted the case to Judge John O. Hennegan of the Circuit Court for Baltimore County to make findings of fact and conclusions of law. Judge Hennegan found that Sachse had violated Rule 1.1 and BP § 10–306, but had not violated Rules 1.7, 8.1, or 8.4. Bar Counsel excepted solely to the hearing judge's findings of fact and conclusions of law in respect to Rule 1.7(b), and recommended that Sachse be indefinitely suspended, with the right to apply for reinstatement after one year. As conditions upon that reinstatement, Bar Counsel asks that we order restitution of the principal of the trust and that Sachse submit to monitoring by Richard B. Vincent, Director of Lawyer Counseling for the Maryland State Bar Association, for a period of two years.

For the reasons recited below, we shall sustain Bar Counsel's exception.

---

1. By order dated June 5, 1996, effective January 1, 1997, this Court renumbered this Rule and the other Rules governing attorney discipline proceedings. They are now found in Chapter 700, Maryland Rules 16–701 through 16–718. In this opinion, all reference to the Maryland Rules will be to the former Md. Rules, BV1 through BV18, which were in effect at the time these proceedings were commenced.

After an evidentiary hearing, Judge Hennegan made the following findings of fact:

"Mr. Douglas T. Sachse was admitted to the Maryland Bar on November 9, 1979. He maintains an office for the practice of law with the firm of Turnbull, Mix and Farmer in Towson, Maryland. Shirley Stemler is the daughter of the late Dorothy J. Thompson. Whitney Stemler Riley and Erin Stemler Drew are the daughters of Shirley Stemler. On or about March 19, 1978, Dorothy J. Thompson executed a Last Will and Testament (hereinafter "the Thompson Will") that provided, *inter alia,* for the creation of a trust upon Mrs. Thompson's death to hold one-half of her net estate for the benefit of her daughter, Shirley Stemler, and Mrs. Stemler's descendants. The Thompson Will specified that Shirley Stemler was to receive net income from the trust in at least quarterly installments during Mrs. Stemler's lifetime, with the principal and undistributed income to be distributed to Mrs. Stemler's then living descendants, per stirpes, upon Mrs. Stemler's death. Mrs. Thompson died on May 13, 1985, and the Thompson Will thereafter was probated in Harford County. Pursuant to the terms of the Thompson Will, a trust (hereinafter "the Stemler Trust") was established, with County Banking and Trust Company appointed to serve as trustee. The original corpus of the Stemler Trust was approximately $50,000.00, of which approximately $45,000.00 was invested in blue-chip stocks and $4,500.00 was placed in a certificate of deposit at County Banking and Trust Company. Mr. Sachse had a professional and social relationship with Shirley Stemler dating back to approximately 1980. Sometime in the spring of 1987, Shirley Stemler hired Mr. Sachse to seek removal of County Banking and Trust Company as trustee of the Stemler Trust based on Mrs. Stemler's dissatisfaction with its investment of the trust assets and the income she was receiving. With the consent of Mrs. Stemler's two daughters, Whitney Stemler (now Riley) and Erin Stemler (now Drew), who were the only then living residual beneficiaries of the Stemler Trust, the Circuit Court for Harford County

approved a Consent Order on May 6, 1987, by which Mr. Sachse became substitute trustee of the Stemler Trust. Upon his appointment as trustee, Mr. Sachse arranged to have the Stemler Trust's stock portfolio transferred into an investment account at Alex. Brown & Sons, Inc. (hereinafter "Alex. Brown"). Alex. Brown received the transferred stock certificates on or about September 18, 1987. Mr. Sachse also received $5,000.00 from redemption of the County Banking and Trust certificate of deposit at the end of December 1987. Out of those funds, Mr. Sachse took $750.00 as a fee for petitioning for appointment of a substitute trustee and for his services as trustee to that point. The remaining $4,250.00 was forwarded to Alex. Brown for investment on behalf of the Stemler Trust. In August 1987, Mr. Sachse, at the request of Mrs. Stemler, filed a petition to have the Stemler Trust terminated and to allow distribution of the principal to Mrs. Stemler's two daughters prior to Mrs. Stemler's death. The Circuit Court for Harford County denied that petition on August 16, 1990. As of the time that the petition to terminate the trust was denied, the total market value of the stocks held in the Alex. Brown investment account was in excess of $70,000.00. From September 1987 through August 1990, Shirley Stemler received periodic distributions of dividend and interest income by transfer from the Stemler Trust investment account into a separate account held at Alex. Brown in the name of Mrs. Stemler individually. Beginning in September 1990 and continuing through August 1991, several distributions were made from the Alex. Brown investment account by way of checks made payable to Mr. Sachse as follows:

| | Date | Check No. | Amount |
|---|---|---|---|
| (i) | September 7, 1990 | 2022318 | $19,472.98 |
| (ii) | February 20, 1991 | 2174207 | $18,758.78 |
| (iii) | April 30, 1991 | 2175800 | $16,255.89 |
| (iv) | July 29, 1991 | 2176459 | $ 2,000.00 |
| (v) | August 5, 1991 | 6480069 | $15,272.70 |
| | | Total | $71,760.35 |

The distributions from the Alex. Brown account depleted the principal to the Stemler Trust, leaving a balance of only eight cents ($0.08) in the account as of August 30, 1991. With the exception of Check No. 2174207, drawn on February 20, 1991, and Check No. 2175800, drawn on April 30, 1991,[2] Mr. Sachse acknowledges that he authorized the above listed distributions and endorsed the checks over to Shirley Stemler with knowledge that she planned to invest the funds in a company known as Autel Corporation.[3] Mr. Sachse prepared Articles of Incorporation for Autel Corporation in 1987. Mr. Sachse had no further active involvement in the operations and activities of Autel Corporation from the time of its incorporation in 1987 through September 1990, when he began releasing Stemler Trust funds to Shirley Stemler for investment in the corporation. Mr. Sachse obtained no financial data about Autel Corporation before releasing Trust funds to Shirley Stemler for investment in the corporation. Mr. Sachse did not obtain any formal security from Shirley Stemler or anyone else to protect the Stemler Trust's "investment" in Autel Corporation. After he began releasing Trust funds to Shirley Stemler for investment in Autel Corporation, Mr. Sachse never requested or received an accounting of those funds.

---

2. Although Sachse has no independent recollection of authorizing the sale of stock to support the distributions, he admitted before the circuit court that he signed the checks over to Shirley Stemler with the understanding that, except as to the first distribution, the funds were in furtherance of an investment in Autel Corporation, a company operated by Mrs. Stemler. In the case of the April 30, 1991 check, Sachse categorically denied having endorsed the check and stated that he later learned that Karl Keffer, with whom Mrs. Stemler approached him about investment in Autel, had been the one to do so. Upon becoming aware of Mr. Keffer's unlawful negotiation of the check, Sachse ratified the disbursement of the funds.

3. Apparently, Autel Corporation, purportedly a producer of defense computer technology, was operated by Shirley Stemler and her husband, Walter, out of the basement of the Stemler home; Mr. Stemler handled the research and development end of the business, while Shirley Stemler managed its business aspects.

Shirley Stemler took the position that the Trust funds were for her personal use as she deemed appropriate.

Fred Eisenbrandt handled the trust account for the [Stemler] Trust. He recalls the distribution of the funds. He states that the sale of the stock could not have occurred without authorization from the Respondent. It was standard procedure at Alex. Brown for sales of stock to occur only at the request of the account holder.

Mr. Sachse began drinking on a regular basis at the law firm when they developed a habit of taking off Friday afternoons and drinking at lunch into the late afternoon. This continued and eventually extended into other days of the week, i.e. Thursday. He eventually had an affair with his current wife while married to his first wife that produced a child with cerebral palsy and a hearing impairment. Obviously, this led to difficulties with the marriage and increased drinking. The marriage ultimately broke down, a separation resulted and the Respondent's drinking became more severe in an effort to sleep and deal with his emotional problems and dilemma[s]. His social worker feared he was suicidal and it was clear he had no judgment or ability to make sound decisions. As a result, he was admitted to Sheppard Pratt's substance abuse program. Subsequently, he was released, got control of his substance abuse and emotional problems, and has been sober since his discharge from Sheppard Pratt Hospital.

Upon his release he attempted to obtain an executed note from Shirley Stemler and Karl Keffer [with whom Shirley Stemler had approached Mr. Sachse about investing in Autel Corporation]. He purchased life insurance policies and executed an indemnity deed of trust to protect the trust corpus.

Respondent admits that he would not invest any of his personal assets in the Autel Corporation."

Based upon these findings, Judge Hennegan concluded that Sachse had "failed to use the knowledge, skill, thoroughness and preparation reasonably necessary for the protection of the

Trust or its beneficiaries" in violation of Rule 1.1 [4] and BP § 10–306. Sachse's admission that he allowed the corpus to be depleted in furtherance of Mrs. Stemler's investment in Autel, without obtaining security therefor or ascertaining the precise nature of the transaction, provided clear and convincing evidence that Sachse had failed to provide competent representation to the Stemler Trust and its beneficiaries, and his attempts to correct his "errors in judgment" were "too late to avoid the responsibilities required" by the Rule. The hearing judge then rejected Bar Counsel's assertion that the fact of Sachse's interest in Autel in conjunction with his representation of Mrs. Stemler constituted a *per se* conflict of interest under Rule 1.7.[5] Given evidence indicating that Sachse had possibly relinquished his interest, if any, in Autel in 1987 and the fact that the disbursements at issue took place in 1990 and 1991, the court was not persuaded by clear and convincing evidence that the Rule had been violated. Judge Hennegan also rejected Bar Counsel's claim that Sachse had "knowingly assisted or induced another to violate the rules of professional conduct or engage in dishonesty, fraud, deceit or misrepresentation" in violation of Rule 8.4.[6] Although the

---

4. Rule 1.1, **Competence**, mandates:
 "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

5. Rule 1.7, **Conflict of Interest: General Rule**, provides, in pertinent part:
 "(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
 (1) the lawyer reasonably believes the representation will not be adversely affected; and
 (2) the client consents after consultation."

6. Rule 8.4, **Misconduct**, reads, in relevant part:
 "It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; [or]

court found that Sachse's bouts with depression and alcoholism had clouded his judgment and that he was subject to "extreme pressure" from Mrs. Stemler and her demands for money, the court was not persuaded that Sachse had engaged in professional misconduct within the meaning of Rule 8.4(a) or (c).

Judge Hennegan further determined that Sachse had not knowingly made a false statement of material fact in denying that he authorized the sale of the stock in the trust. Specifically, the court found that Sachse's acknowledgment of his ultimate responsibility for the investment of trust assets in Autel could not be reconciled with violation of Rule 8.1. "It is hard to believe," the judge stated, "that [Sachse] would knowingly make a false statement when he accepts full responsibility for the ultimate event. The sale of the stock may be a material [f]act in the distribution of the Trust funds but the denial of it may not be a material fact since there is no denial that the distribution of the funds to Shirley Stemler could easily have been averted by [Sachse] after the sale of the stock."

As we have stated, Bar Counsel has excepted solely to the hearing judge's failure to find a violation of Rule 1.7(b). Bar Counsel asserts that Sachse's representation of the Stemler Trust was compromised by his relationship with Shirley Stemler when he authorized the release of trust funds to Mrs. Stemler. Bar Counsel adds that the severity of Sachse's misconduct was "compound[ed]" by his failure to arrest further depletion of the trust assets when he ratified an unauthorized distribution from Alex. Brown on April 30, 1991. "At that point," Bar Counsel argues, Sachse's "conduct transcended what might be characterized as simply poor judgment and rose to the level of affirmative participation in Shirley Stemler's systematic use of trust monies to fund the operations of Autel Corporation." Bar Counsel further disputes that

----

. . . .
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

Sachse's alcoholism may mitigate the egregiousness of his conduct, arguing that "he understood the nature of Shirley Stemler's conduct yet chose to ratify it rather than taking appropriate remedial measures."

In the management of a trust, a trustee is charged with exercising "the care, skill, prudence, and diligence of an ordinary prudent [person] engaged in similar business affairs and with objectives similar to those of the trust in question." *Maryland Nat'l Bank v. Cummins*, 322 Md. 570, 580, 588 A.2d 1205, 1210 (1991). "All trustees are subject to common law duties and equitable rules or principles." George G. Bogert, *The Law of Trusts and Trustees* § 541 (2d ed. rev. 1993). "Perhaps the most fundamental duty of a trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the beneficiar[ies] and must exclude all selfish interest and all consideration of the interests of third persons." *Id.* § 543; *see also Board of Trustees v. Mayor of Baltimore*, 317 Md. 72, 109, 562 A.2d 720, 738 (1989) ("[T]he general duty of loyalty is well-established in Maryland law."), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1167, 107 L.Ed.2d 1069 (1990). "[A] trustee is charged by law with representing the beneficiaries' interests," *Board of Trustees*, 317 Md. at 90, 562 A.2d at 728, and is liable for acting to their detriment when the conduct causing the loss "failed to conform to the standard of care and skill applicable to trustees in the administration of the trusts," Bogert, *supra* § 541. "It is clear that the trustee's duty of loyalty extends beyond a prohibition against self-dealing and conflict of interest.... Even if the trustee has no personal stake in a transaction, the duty of loyalty bars him from acting in the interest of third parties at the expense of the beneficiaries." *Board of Trustees*, 317 Md. at 109, 562 A.2d at 738. Conflicts of interest impair the trustee's ability to act on behalf of the beneficiaries with independent and disinterested judgment in the administration of the trust, the rationale being that it is generally not possible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction. Bogert, *supra* § 543. Whether or not a conflict exists must be deter-

mined by the facts of each individual case. *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 379, 653 A.2d 909, 918 (1995).

"In reviewing the multiple findings made by the hearing judge, we accept findings of fact made by the hearing judge if they are supported by clear and convincing evidence, and are not clearly erroneous." *Attorney Grievance Comm'n v. Boyd,* 333 Md. 298, 303, 635 A.2d 382, 384 (1994) (citing *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 287–88, 614 A.2d 102, 108 (1992); *Attorney Grievance Comm'n v. Bakas,* 323 Md. 395, 402, 593 A.2d 1087, 1091 (1991)). To this end, hearing judges may pick and choose the evidence upon which they will rely. *Attorney Grievance Comm'n v. Nothstein,* 300 Md. 667, 684, 480 A.2d 807, 816 (1984). We shall, however, make "an independent, detailed review of the complete record with particular reference to ... evidence relating to [a] disputed factual finding." *Bar Ass'n v. Marshall,* 269 Md. 510, 516, 307 A.2d 677, 680–81 (1973).

Judge Hennegan concluded that no conflict of interest existed by virtue of Sachse's ownership, if at all, of a one percent interest in Autel. "His representation of Shirley Stemler in part and while trustee," Judge Hennegan added, "was ... clearly known to all parties in interest and there is no evidence of any objections raised by any beneficiaries." Bar Counsel excepts to this conclusion, charging that Sachse "violated Rule 1.7(b) by virtue of the conflict between his obligation to preserve the principal of the Stemler Trust and the interest of Shirley Stemler individually in pursuing the Autel 'investment.'" "When [Sachse] succumbed to Shirley Stemler's requests for the distribution of trust monies to be used for her own misguided funding of Autel Corporation," Bar Counsel argues, "he pursued Mrs. Stemler's interests at the expense of the trust's [interests]."

As a threshold matter, Sachse challenges Bar Counsel's ability to except to Judge Hennegan's findings of fact and conclusions of law on Rule 1.7(b). He contends that Bar Counsel did not argue alternative bases of conflict, relying

solely upon the fact of his one percent ownership interest in Autel in charging him with a conflict of interest. Therefore, he continues, Bar Counsel may not argue at this juncture that his simultaneous representation of Shirley Stemler and the Trust was the basis for its allegation of conflict. Sachse also disagrees that the facts support the substance of Bar Counsel's exception. He contends that his belief that Mrs. Stemler and her daughters had a very close relationship, and that Mrs. Stemler was providing them with candid information regarding the Trust, was not unreasonable and demonstrates that "his decision making process was based on his belief that he was seeking the interest of all the beneficiaries of the Stemler Trust."

██ Our independent review of the record reveals that Bar Counsel did in fact raise alternative theories of conflict before the circuit court[7] and, therefore, may pursue its exception before this Court. Thus, we shall proceed to determine whether Sachse's actions relative to the trust were improper. Sachse maintains that his impression of the closeness of Mrs. Stemler and her daughters, coupled with his belief that the Autel investment could net millions to the benefit of the Trust and its beneficiaries, warrants this Court's acceptance of Judge Hennegan's Finding of Fact and Conclusion of Law. Although superficially attractive, upon closer examination, Sachse's contentions are without merit. In his testimony

---

7. Specifically, in closing, Bar Counsel argued:

"I would like to point out to the Court with respect to the 1.7(b) issue, even absent the ownership interest in the Autel Corporation, I think there is still an issue for the Court to evaluate ... that being whether ... in connection with his responsibilities to the trust, whether those were materially limited by his responsibilities to another client or to a third person, that being Shirley Stemler.

Whether you identify her as a client or a third person, Mr. Sachse obviously had some sort of ongoing relationship, business and social, with her and he allowed himself to be persuaded, I would submit to the Court, by that relationship, into releasing funds that he had an obligation to the other client, the trust, to protect.

So I think that there can still be a finding of a Rule [1.7](b)(1) violation, even in finding that he had a 1 percent interest in Autel Corporation. Those are two alternative theories."

before the circuit court, Sachse stated that he knew that he, as trustee, had to give Alex. Brown authorization before the sale of stock in the Stemler Trust could be effected, and admitted that, although he did not recall authorizing the sale of the constituent stock or the distribution of the checks, he either signed the checks over to Mrs. Stemler or, in the case of the April 30, 1991 check, he ratified its issuance. He also described Mrs. Stemler as "assertive, [and] strong," and admitted that he "let [him]self give in to her relentlessness." He added that, except for the first disbursement, he understood that the money was in furtherance of investment in Autel. Yet, he did not obtain any information about the security of the investment prior to the periodic outlay of sums totaling $71,760.35 to Mrs. Stemler based upon her word alone.

▮▮▮ Furthermore, his testimony that he had no reason to believe that the relationship extant between Mrs. Stemler and her daughters did not remain close and that she was advising them of her actions is unpersuasive. An honest but misguided assessment of the facts does not relieve a trustee of the responsibility to act solely in the interest of the trust. " 'Fiduciaries in general, and attorneys in particular, must remember that the entrustment to them of the money and property of others involves a responsibility of the highest order. They must carefully administer and account for those funds.' " *Attorney Grievance Comm'n v. Kramer*, 325 Md. 39, 51, 599 A.2d 100, 107 (1991) (quoting *Attorney Grievance Comm'n v. Owrutsky*, 322 Md. 334, 345, 587 A.2d 511, 516 (1991)). Sachse had a duty to ascertain whether the alleged investment in Autel was one properly pursued by the Trust. He did not conduct any such investigation, permitting, instead, Mrs. Stemler to dictate the ultimate disposition of the funds. In so doing, he breached his duty of loyalty to the Trust.[8] Sachse

---

8. Indeed, looking to each disbursement, we discern a pattern of behavior in which Sachse (admittedly) compromised the integrity of the Trust in response to pressure from Mrs. Stemler. At the hearing before Judge Hennegan, Sachse testified that, although he believed the September 7, 1990 disbursement of $19,472.98 to be an interest payment under the terms of the Stemler Trust, he did ask that Mrs. Stemler

admittedly knew of his responsibilities as trustee of the Stemler Trust and, armed with the knowledge that Mrs. Stemler was anxious to access the trust principal (as evidenced by, *inter alia*, her 1989 campaign to have the Trust terminated), Sachse nevertheless yielded to her machinations and sacrificed the integrity of the Trust. We shall, therefore, sustain Bar Counsel's exception to Judge Hennegan's findings and conclusion relative to Rule 1.7(b) and hold that Sachse did entertain a conflict of interest when he permitted Mrs. Stemler's imperiousness to override the best interests of the Stemler Trust and its beneficiaries.

We now turn to the matter of Sachse's sanction. We are mindful that the imposition of sanctions is reflective of our responsibility "to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute." *Maryland State Bar Ass'n v. Agnew*, 271 Md. 543, 549, 318 A.2d 811, 814 (1974). "In determining the appropriate sanction for an offending attorney, we have recognized that 'the severity of the sanction to be imposed is dependent on the facts and circumstances of each case' and the Court 'may consider facts in mitigation....'" *Attorney Grievance Comm'n v. Kenney*, 339 Md. 578, 587, 664 A.2d 854, 858 (1995)

---

obtain her daughters' written concession that the money was in fact a payment of interest. He received nothing from them and did not pursue the matter further. Although he had *no independent recollection* of the circumstances surrounding the February 20, 1991 distribution of $18,758.78, in response to a letter from Alex. Brown confirming the sale of shares to support the issue, Sachse wrote Alex. Brown, stating that he did not grant permission for the sale but that he expected any proceeds therefrom to be forwarded to him. He received the funds and, apparently, endorsed them over to Shirley Stemler. Sachse adamantly denied that he had authorized the sale of stock necessary to support the issuance of the $16,255.89 check on April 30, 1991. He further testified that he had not signed the check; he later learned that Karl Keffer had negotiated it in his name, to which Sachse "said it was ok." In July of 1991, Sachse recalled that Mrs. Stemler went so far as to jump out of her car in traffic to ask him to endorse the $2,000.00 check issued on July 29, because she needed more funding for Autel. He further testified that he could not recall the circumstances respecting the distribution of $15,272.70 on August 5, 1991.

(quoting *Attorney Grievance Comm'n v. Pollack,* 279 Md. 225, 238, 369 A.2d 61, 68 (1977)). "[A] less severe sanction than that ordinarily dictated may be appropriate when an attorney is able to establish the existence of compelling extenuating circumstances." *Id.* at 588, 664 A.2d at 858.

At the hearing before Judge Hennegan, the evidence revealed that Sachse has had a long history of emotional and substance abuse problems. Bar Counsel maintains that, "[a]lthough some of [Sachse]'s decisions may be partially attributable to impaired judgment arising from his alcoholism, . . . [Sachse] had the capacity to recognize Shirley Stemler's actions . . . as conduct fraught with deceit." Sachse's alcoholism notwithstanding, Bar Counsel continues, "he understood the nature of Shirley Stemler's conduct yet chose to ratify it rather than taking appropriate remedial measures." Sachse concedes that his conduct stemmed from the exercise of poor judgment, but submits that he has "attempted to right the wrongs he committed [and] . . . worked diligently and faithfully to resolve the underlying problems resulting in the poor judgment and impaired decision making ability that gave rise to this proceeding." He asserts that he has remained sober for five years and asks that we accept Judge Hennegan's recommended sanction of a published reprimand.

█ Although we have of late been reticent to allow alcoholism to mitigate violations of legal and ethical rules that would ordinarily warrant disbarment, *see Kenney, supra,* 339 Md. at 594, 664 A.2d at 862, we recognize that Bar Counsel has not sought Sachse's disbarment in the instant proceeding. Rather, Bar Counsel asks, for the violation of a fiduciary obligation, that we indefinitely suspend Sachse, with a right to apply for reinstatement after one year. Bar Counsel also asks that we condition his reinstatement upon restitution of the principal of the Stemler Trust and periodic monitoring by Richard B. Vincent. As we stated in *Kenney,* 339 Md. at 594–95, 664 A.2d at 862:

"Severe sanctions are necessary to protect the public from being victimized from any further dishonesty on the part of

the attorney. We do, however, recognize that alcoholism is a serious medical condition and we will be more sympathetic to attorneys who recognize their need for assistance and seek to rehabilitate themselves before their transgressions are discovered. Nonetheless, we believe that when violations ordinarily warranting disbarment are found, our duty to protect the public is strong and we cannot permit alcoholism to alleviate an attorney's responsibility to recognize the wrongfulness of his or her actions and to honor his or her commitments to his or her clients."

While Sachse has not attempted to avoid responsibility for his actions in respect to the Stemler Trust, he is not relieved of liability for those actions. Therefore, for the reasons stated above, the proper sanction for his violation of Rule 1.7(b) and BP § 10–306 will be indefinite suspension from the practice of law with the right to reapply not less than one year from the date of the filing of this opinion. As a condition to his readmission, Sachse is also ordered to provide or absolutely assure restitution of the corpus of the Trust and to submit to monitoring by Richard B. Vincent for a period of two years.

*IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DOUGLAS T. SACHSE.*