557 A.2d 1329

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Gary Steven MANDEL.

Misc. (Subtitle BV) No. 40, Sept. Term, 1985.

Court of Appeals of Maryland.

May 26, 1989.

Melvin Hirshman, Bar Counsel, and Glenn M. Grossman, Asst. Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Robert F. Dashiell, Baltimore, for respondent.

Argued before MURPHY, C.J., COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (Retired) Specially Assigned.

MURPHY, Chief Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against Gary Steven Mandel, alleging violations of the Code of Professional Responsibility. The petition was based upon Mandel's conviction on September 30, 1985 in the United States District Court for the District of Maryland of four violations of 21 U.S.C. § 843(a)(3) (obtaining a Schedule II, Narcotic Controlled Substance by furnishing false and forged prescriptions.)[1] We referred the matter, pursuant to Maryland Rules BV16c and BV9b, to Judge Arrie W. Davis of the Circuit Court for Baltimore City to make findings of fact and conclusions of law.

---

1. This section provides, in pertinent part:
   a) It shall be unlawful for any person knowingly or intentionally ...
   3) To acquire or obtain possession of a controlled dangerous substance by misrepresentation, fraud, forgery, deception, or subterfuge.

After conducting an evidentiary hearing, Judge Davis filed detailed findings and conclusions as follows. He found from the evidence presented that in 1982 Mandel experienced a recurrence of cervical pain which initially occurred in the mid–1960's and had required two operations on his cervical spine. Subsequently, Dr. Michael Salcman, Mandel's physician, advised him that he would need another operation to ease the pain. The evidence showed that Mandel sought a second opinion from Dr. Thomas Carter who advised him that surgery was unnecessary and that the pain could be controlled by the prescription drug, dilaudid. Over a period of some 26 months, Dr. Carter wrote approximately 350 prescriptions for dilaudid (a total of 19,000 tablets). Mandel forged Dr. Carter's signature on 8 prescriptions for dilaudid in August and September of 1984.

There was testimony before Judge Davis from Dr. William Lerner, a qualified expert in substance abuse and iatrogenic narcotic addiction, that "the drug dilaudid is one of the most potent prescription drugs known to medicine." He testified that a dilaudid addict "would generally beg, borrow, steal and/or forge to avoid the pain of withdrawal." Mandel testified, and Judge Davis found as a fact, that Mandel was addicted to dilaudid at the time he forged the prescriptions. Judge Davis said that he was "persuaded by the evidence that it was [Mandel's] addiction to dilaudid which led to his criminal actions." The addiction, Judge Davis said, was "caused in part by the massive doses prescribed by Dr. Carter." He said that while the offenses involved fraud and were crimes of moral turpitude, they were not committed with scienter or intent to harm or deprive others but rather to fulfill the craving of one who was clearly addicted." Judge Davis noted the testimony of Dr. Lerner that Mandel "was affected in the same manner as any drug addict and, hence, had little control over his actions."

Judge Davis concluded that Mandel's convictions constituted violations of DR 1–102(A)(3), (4), (5) and (6):

(A) A lawyer shall not:

(3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

■ Bar Counsel took exception to Judge Davis' conclusion that Mandel's drug addiction induced him to forge the prescriptions. He attacks the evidentiary effect of Dr. Lerner's testimony, claiming that it failed to establish the necessary causal connection because Dr. Lerner did not personally examine Mandel nor discuss his addiction with him. As a consequence, Bar Counsel suggests that Dr. Lerner necessarily left unexplained why Mandel sought detoxication on two occasions and otherwise conformed his conduct to law but was not able to refrain from forging the prescriptions. At the same time, Bar Counsel recognizes that Mandel had an iatrogenic narcotic addiction to dilaudid at the time of his criminal conduct and that he was in a sense a victim of Dr. Carter's negligent conduct. Bar Counsel also accepts the finding that generally an addiction to dilaudid could cause "an addict to beg, borrow, steal and/or forge to avoid the pain of withdrawal." Nevertheless, contrary to the findings of Judge Davis, Bar Counsel asserts that Mandel did not meet his burden of establishing by clear and convincing evidence that his addiction induced or was, to a substantial degree, responsible for his conduct. Bar Counsel also maintains that it is paradoxical to accept Mandel's position that his addiction caused the conduct upon which he was convicted but that he had authority from Dr. Carter to write the prescriptions. Bar Counsel recommends disbarment as the appropriate sanction for Mandel's criminal misconduct.

We accept Judge Davis' finding that Mandel's criminal conduct was induced by his addiction to dilaudid. In his testimony, Mandel described the effect dilaudid had on his conduct. He said withdrawal from the drug resulted in

back pain, nausea, vomiting and anxiety. He testified that after taking the dilaudid "[t]he relief was absolutely immediate ... I felt that I was functioning normally and everything was fine." He explained that "[t]he drugs were more important than anything else," and that he had to know where his next supply could be had.

Dr. Lerner's expert testimony, which Judge Davis accepted, corroborated Mandel's assertions. He said that an individual addicted to dilaudid could operate normally while the addiction was satisfied, but without the drug, as the anxiety and symptoms associated with withdrawal began to be experienced, an individual would go to any extremes to obtain the narcotic. Based on his expertise in the field of drug addiction, his knowledge of Mandel's medical records, and of the circumstances leading to Mandel's indictment, it was Dr. Lerner's conclusion that Mandel's forgery of the prescriptions for dilaudid was causally related to his addiction. While a medical opinion based on a personal examination of Mandel would have been preferable, its absence does not diminish the force and effect of Dr. Lerner's testimony. We cannot conclude that Judge Davis erred in finding clear and convincing evidence of the causal connection between Mandel's addiction and his misconduct and that it constituted a mitigating factor to be taken into account in determining the disciplinary sanction to be imposed in this case.

Mandel accepts Judge Davis' finding that he violated Disciplinary Rule 1-102(a)(3), (4), (5) and (6). He asks for leniency, pointing out that he has been suspended from the practice of law since February 24, 1986 and that his addiction to dilaudid should be considered as a mitigating factor in imposing a sanction.

■ We have recognized addiction to drugs as a mitigating factor when the addiction is "to a substantial degree responsible for the conduct of the attorney." *Attorney Griev. Comm'n. v. Northstein,* 300 Md. 667, 685, 480 A.2d 807; *Attorney Griev. Comm'n. v. Winters,* 309 Md. 658, 663, 526 A.2d 55 (1987). While disbarment usually follows a

conviction of a crime of moral turpitude which involves fraud or dishonesty, a lesser sanction may be justified when, as here, compelling mitigating circumstances exist. *Attorney Griev. Comm'n. v. Barnes*, 286 Md. 474, 408 A.2d 719 (1979); *Attorney Griev. Comm'n. v. Kahn*, 290 Md. 654, 431 A.2d 1336 (1981). Plainly, in the circumstances of this case, disbarment is not warranted.

Mandel testified before Judge Davis on May 11, 1988 that he has overcome his addiction and is drug-free. He said that he last took dilaudid in September 1984 when he underwent a detoxification program under the care of Dr. Siebert. He further testified that the Federal Aviation Administration (FAA) restored his pilot's license after an evaluation by Dr. Siebert and that he was subjected to a psychological examination to ascertain the effect of drug addiction on his motor skills. Mandel stated that he had undergone random testing by the FAA and has consented to continued random testing by Dr. Siebert. He reported his last physical examination was in February of 1988. We were advised by Mandel's counsel at the hearing before us on April 10, 1989 that Mandel retains his pilot's license, presumably after an annual physical examination.

■ Other than the testimony of Dr. Lerner, the record contains no medical reports from treating or examining physicians to demonstrate Mandel's present mental and physical condition. We think it necessary in order to protect the public that we be provided with proper and accurate medical evidence that Mandel has in fact overcome his addiction, and is now medically able to engage in the practice of law.

We will, therefore, continue Mandel's suspension pending receipt of the requisite current medical evidence showing that he has overcome his addiction to dilaudid and is in all respects presently drug-free. In this regard, Mandel may wish to confer with Bar Counsel and the Lawyers Counselling Service of the Maryland State Bar Association concerning the nature of the medical evidence to be obtained.

Upon receipt of this evidence, we will consider whether the sanction we have imposed by continuing Mandel's suspension should remain in effect.

IT IS SO ORDERED. COSTS TO ABIDE RECEIPT OF THE ADDITIONAL EVIDENCE AS HEREIN DIRECTED.