797 A.2d 757

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND,**

v.

**Craig Steven GARFIELD.**

**Misc. (Subtitle AG) No. 7, Sept. Term, 2001.**

Court of Appeals of Maryland.

May 6, 2002.

Melvin Hirshman, Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Henry Myerberg, Towson, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

HARRELL, Judge.

Pursuant to Maryland Rule 16–709(a) [1], Bar Counsel, on behalf of the Attorney Grievance Commission (Petitioner) and at the behest of the Review Board, filed with this Court a petition for disciplinary action against Craig Steven Garfield, Esquire (Respondent).[2] In the petition, Bar Counsel alleged violations of the Maryland Rules of Professional Conduct (MRPC) 1.1, 1.3, 1.4, 1.16, and 8.4(d) in connection with

1. The charges in this case were filed and processed below prior to 1 July 2001; thus, we refer to the attorney grievance procedural rules in effect prior to that date. The applicable rule, 16–709(a), states that "[c]harges against an attorney shall be filed by the Bar Counsel acting at direction of the Review Board."

2. Pursuant to Maryland Rule 16–706(b)(1)(a), Respondent waived an Inquiry Panel proceeding. In oral argument before the Review Board, provided for in Md. Rule 16–706(b)(3), Respondent requested that the Board "remand the matter for an inquiry panel proceeding for possible implementation of a program similar to the 'diversionary program,' " which was "established under the new Rules to take effect July 1, 2001." The Review Board denied Respondent's request and directed Bar Counsel to file charges against the Respondent.

**90**

Respondent's representation of Artinus Shands[3], Darron C. Addison, Lillian Johnson, Samuel C. Veney, Drucella Mann, Diane Postal, and Robert Yinger (the latter in two separate matters).[4]

---

3. Actually, Ms. Renee B. Johnson (Mr. Shands's mother) engaged Respondent on behalf of Mr. Shands, who was incarcerated at the time. According to Bar Counsel's petition for disciplinary action, Ms. Johnson employed Respondent to represent her son in a personal injury action.

4. The aforementioned Maryland Rules of Professional Conduct provide:
 **Rule 1.1. Competence.**
 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
 **Rule 1.3. Diligence.**
 A lawyer shall act with reasonable diligence and promptness in representing a client.
 **Rule 1.4. Communication.**
 (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
 **Rule 1.16. Declining or terminating representation.**
 (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
 (1) the representation will result in violation of the Rules of Professional Conduct or other law;
 (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client;
 (3) the lawyer is discharged.
 (b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:
 (1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;
 (2) the client has used the lawyer's services to perpetrate a crime or fraud;
 (3) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;
 (4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
 (5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
 (6) other good cause for withdrawal exists.

This Court referred the matter to Judge John M. Glynn of the Circuit Court for Baltimore City to conduct an evidentiary hearing and make findings of fact and conclusions of law in accordance with Md. Rules 16–709(b) [5] and 16–711(a) [6].

After an evidentiary hearing held on 24 September 2001, the hearing judge found by clear and convincing evidence that Respondent violated MRPC 1.1, 1.3, 1.4(a), 1.16, and 8.4(d). Petitioner, pursuant to Md. Rule 16–711(b)(2) [7], filed with this Court exceptions to the findings of facts and conclusions of law, and a recommendation for sanction (2 year suspension and specific conditions for reinstatement). Respondent filed a reply to Petitioner's exceptions and a recommendation for sanction (urging an unspecified "remedial form of sanction," though earlier he proposed a conditional public reprimand).

---

(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

**Rule 8.4. Misconduct.**

It is professional misconduct for a lawyer to:

(d) engage in conduct that is prejudicial to the administration of justice; . . . .

5. Rule 16–709(b) provides that the "Court of Appeals by order may direct that the charges be transmitted to and heard in any court and shall designate the judge or judges to hear the charges and the clerk responsible for maintaining the record in the proceeding."

6. Rule 16–711(a) mandates that "[a] written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."

7. Rule 16–711(b)(2) states that "[w]ithin 15 days after the filing of the record in the Court of Appeals, the attorney or the Bar Counsel may file in the Court of Appeals exceptions to the findings and conclusions and may make recommendations respecting the disciplinary sanction to be imposed . . . ."

## I.

From the evidentiary record below, the hearing judge, in a memorandum dated 11 October 2001, explained the following:

In his complaint, Bar Counsel contends that the Respondent engaged in professional misconduct as defined by Rule 16–701(k) of the Maryland Rules of Procedure in cases involving: Renee B. Johnson [ (for her son, Artinus Shands) ], Darr[o]n C. Addison, Lillian Johnson, Samuel C. Veney, D[ruce]lla Mann, Diane Postal and Robert Yinger, in two (2) separate matters. At hearing, Bar Counsel voluntarily dismissed the allegations with respect to Samuel C. Veney. It should be noted that the Mann, Postal, and Yinger cases were brought to the attention of Bar Counsel voluntarily by Respondent. All of the matters which remain for consideration by the Court were civil matters. It is undisputed that these cases were either dismissed for want of prosecution or barred by limitations as a result of Respondent's professional lapses.[8] During all relevant periods, the Respondent did not maintain professional liability insurance.

Bar Counsel alleges that Respondent behaved unethically and unprofessionally in violations of the following Maryland Rules of Professional Conduct:

Rule 1.1 Competence

Rule 1.3 Diligence

---

8. Because it is undisputed that Respondent's "professional lapses" resulted in the dismissal or barring of the seven cases involved in this matter, it is not necessary that we describe all of the details of each case in particular. *See, e.g., Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 381, 773 A.2d 463, 466 (2001) (finding it unnecessary to describe the details of an attorney's thefts where she "freely acknowledged that on many occasions over a period of time she misappropriated money"). We note, however, that all of the cases were civil in nature and involved personal injury claims, and, as the hearing judge explained, were either dismissed for want of prosecution or barred by limitations. Specifically, the cases of Ms. Johnson, Ms. Mann, and Mr. Addison suffered from Respondent's lack of prosecution, while the cases of Ms. Postal, Mr. Shands, and Mr. Yinger were not filed within the appropriate limitations period.

Rule 1.4 Communication

Rule 1.16 Declining or Terminating Representation

Rule 8.4 Misconduct

By pleading, Respondent admits his violation of Rule 1.1 but adds that at all times he "would deny that he does not possess the required legal knowledge or skill to competently represent his clients."

Respondent admits the alleged violation of Rule 1.3 regarding Diligence;

Respondent admits the alleged violation of Rule 1.4 regarding Communications; only with respect of sub[ ]section (a), but denies violating subparagraph (b) of the Rule;

Respondent admits violating Rule 8.4 regarding Misconduct;

Respondent denies that he violated Rule 1.16 regarding Declining or Terminating Representation.

Continuing, the hearing judge noted that "Respondent's presentation focused on the issue of mitigation,"[9] and summarized his evidence:

[Respondent] called as witnesses, Richard E. Vincent, Director of Lawyer Counseling for the Lawyer Assistance Committee of the Bar; and Dr. John E. Davis, an expert in psychiatry[10] and substance abuse. He also testified on his

---

**9.** Although Respondent contended that, as a matter of law, his actions did not violate MRPC 1.4(b) or 1.16, the proceeding in the Circuit Court focused on Respondent's substance abuse, as that related to mitigation. As counsel for Respondent explained to the hearing judge,

> [t]he real issues here [ (at the evidentiary hearing) ] deal with why this occurred or why the limitations were missed, why [Respondent] didn't show up in Court on a particular day. The reasons why that occurred is what's important, as well as what the sanction to be imposed is.... ˇ
>
> . . .
>
> [F]or substance abuse to be given any credence in mitigating a sanction, the substance abuse would have to be found to have been the root cause of the underlying problem where the error is. And that's what our case is about here today.

**10.** According to Dr. Davis's *curriculum vitae* and testimony, he received his Ph.D. in "Human Development." Dr. Davis, therefore, is a doctor of psychology, not psychiatry (which requires medical training).

own behalf regarding his personal history with particular emphasis on his contention that his abuse of cocaine was at the root of his professional derelictions.

Both expert witnesses and Respondent contended that the root cause of Respondent['s] professional failures was his drug abuse. They emphasized that he cooperated fully with Bar Counsel, apologized for his failings, and offered to make his clients whole.

Richard Vincent contended that in cases involving drug abuse, it is particularly important that a "hammer" continue to hang over the head of the drug abuser to ensure continued compliance with a program that requires the avoidance of drug use. Both witnesses stated that during the period of his professional derelictions, the Respondent was struggling through a very bad divorce, and for a time was involved in an additional relationship which he found emotionally overwhelming.

Likewise, they testified that they had worked extensively with Respondent and that he had "embraced the recovery program." He continues to be supervised by Dr. Davis to insure that he not use illegal drugs and regularly attends therapy and meetings of Narcotics Anonymous.

Dr. Davis believed that the Respondent's use of drugs, in the context of his family and social problems, created a psychological state of extreme distractibility. Dr. Davis concluded that it was Respondent's drug use that caused him to miss various filing deadlines resulting in the dismissal of all lawsuits in the cases alleged by Bar Counsel. However, he testified that since seeking drug treatment and acknowledging his drug abuse problems which date back to the mid 90's, he is now handling only criminal cases.

Respondent's defaults occurred principally between the period of 1998 and 2000. Earlier, he was functioning effectively as an attorney. Respondent emphasized that he feels great remorse and hopes to compensate his former clients for the consequences of his failures. Also, he indicated that he was amenable to supervision by another attorney, if he

were permitted to continue to practice law in the State of Maryland.

Based on the evidence presented and inferentially satisfied to a clear and convincing standard, the hearing judge concluded that Respondent "violated the Maryland Rules of Professional Conduct as alleged, with the exception of Rule 1.4(b) with respect to which," the hearing judge found "no specific evidence was offered." In addition, although Respondent "challenged the allegations concerning Rule 1.16," the judge found that "the record support[ed] a finding that he violated th[at] rule." It was "plain" to the hearing judge, "that [Respondent's] continued representation of clients was impaired by the use of drugs, thereby violating the rules of professional conduct." "Accordingly," he found "Respondent in violation of Rules 1.1, 1.3, 1.4(a), 1.16, and 8.4[ (d) ]."

The hearing judge went on to explain that "[t]he central issue in this case concern[ed] whether the Respondent's drug abuse was the root cause of subsequent professional derelictions." On that issue, the hearing judge concluded that:

[t]he record clearly establishes, and the Court is persuaded by [a] preponderance of the evidence, that for two decades Mr. Garfield practiced criminal law successfully in the courts of the State of Maryland and was regarded both by his fellow practitioners and the Bench as an asset to the Bench, Bar and Community.

. . .

The Court is persuaded by a preponderance of the evidence that Respondent's professional failures were substantially the result of drug abuse. While he may have struggled with his domestic and relationship problems, it was his drug abuse that pushed him across the line which separates those who struggle and succeed, if only barely, from those who fail. . . .

Respondent's expert witnesses and the testimony of Respondent support these findings. They are also supported by the timing of Respondent[']s failures which seem related to his most severe drug abuse, and by the nature of those

failures, which seem the product of his inability to focus on detailed office responsibilities. This is particularly true in those areas of the law which he was the least experienced and expert.

The Court will not presume to speculate about exactly how Respondent's other struggles played into his addiction, and how they all worked to undermine his professionalism. It seems plain on this record in this case, that but for drug abuse, Respondent would have been an unlikely candidate for professional discipline. (Footnote omitted).

Respondent filed no exceptions to the hearing judges findings of fact or conclusions of law. On 29 October 2001, Respondent recommended a sanction of a public reprimand subject to "continued drug therapy," monitoring by Mr. Vincent's office, limitation of his practice to criminal law, and "supervision by an attorney subject to reporting requirements to Bar Counsel." Petitioner, on 2 November 2001, filed with the Court exceptions challenging the hearing judge's finding that he was " 'persuaded by a preponderance of the evidence that Respondent's professional failures were substantially the result of drug abuse.' " According to Petitioner, the hearing judge's findings "[we]re inconsistent with the evidence from the Respondent's own testimony and the testimony from Respondent's own expert." Based on Standard 4.42 of the ABA Standards for Imposing Lawyer Sanctions, Petitioner recommended a sanction of a two year suspension from the practice of law.[11] On 20 November 2001, Respondent filed a reply to Petitioner's exceptions disagreeing "with Petitioner's claim that [the hearing judge's] findings were inconsistent with the evidence," and suggesting "that a remedial form of sanction would be more appropriate."

---

11. Standard 4.42 of the ABA Standards for imposing Lawyer Sanctions, *reprinted in ABA/BNA Lawyer's Manual on Professional Conduct*, at 01:823, provides that "[s]uspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."

## II.

 We recently explained in *Attorney Grievance Comm'n v. Snyder*, 368 Md. 242, 253, 793 A.2d 515, 521 (2002), that "[a]s the Court of original and complete jurisdiction for attorney disciplinary proceedings in Maryland, we conduct an independent review of the record." (Citing *Attorney Grievance Comm'n v. Garland*, 345 Md. 383, 392, 692 A.2d 465, 469 (1997)). *See also Attorney Grievance Comm'n v. Wallace*, 368 Md. 277, 288, 793 A.2d 535, 542 (2002) (quoting *Garland*). "The hearing judge's findings of fact will be accepted unless we determine that they are clearly erroneous." *Id.* (citing *Attorney Grievance Comm'n v. Sachse*, 345 Md. 578, 589, 693 A.2d 806, 811 (1997) (quoting *Attorney Grievance Comm'n v. Boyd*, 333 Md. 298, 303, 635 A.2d 382, 384 (1994))). As to "the hearing judge's conclusions of law, however, 'our consideration is essentially *de novo*,' as 'the ultimate determination ... as to an attorney's alleged misconduct is reserved for this Court.' " *Attorney Grievance Comm'n v. Thompson*, 367 Md. 315, 322, 786 A.2d 763, 768 (2001) (alteration in original) (quoting *Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554, 562, 745 A.2d 1037, 1041 (2000); *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 470, 671 A.2d 463, 473 (1996)).

The only exception in this matter was taken by Petitioner regarding the hearing judge's finding that Respondent's "professional failures were substantially the result of drug abuse." This exception relates to whether we should treat Respondent's drug addiction as a mitigating factor in our determination of the appropriate sanction for Respondent.[12]

---

12. Petitioner filed no exceptions to the hearing judge's conclusion that Respondent violated MRPC 1.16, providing, in part, that a lawyer shall not represent a client or shall withdraw from representation of a client if "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client. . . ." We are left to assume, therefore, that Petitioner does not dispute that Respondent's condition impaired his ability to represent clients, but rather focuses on whether Respondent's addiction was the *cause* of his "professional lapses," which goes to the issue of mitigation.

## III.

 When considering sanctions, it is well settled that: [t]he purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney. The public interest is served when this Court imposes a sanction which demonstrates to members of this legal profession the type of conduct that will not be tolerated. By imposing such a sanction, this Court fulfills its responsibility to insist upon the maintenance of the integrity of the Bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute. Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates the disciplinary rules.

*Attorney Grievance Comm'n v. Dunietz,* 368 Md. 419, 428, 795 A.2d 706, 711 (2002) (internal quotations omitted) (quoting *Wallace,* 368 Md. at 289, 793 A.2d at 542–43 (citations omitted)). *See also Attorney Grievance Comm'n v. Lane,* 367 Md. 633, 642, 790 A.2d 621, 626 (2002); *Attorney Grievance Comm'n v. Harris,* 366 Md. 376, 405, 784 A.2d 516, 532–33 (2001); *Attorney Grievance Comm'n v. Zdravkovich,* 362 Md. 1, 31–32, 762 A.2d 950, 966 (2000). " 'Of course, what the appropriate sanction for the particular misconduct is, in the public interest, generally depends upon the facts and circumstances of the case,' " *Dunietz,* 368 Md. at 428–29, 795 A.2d at 711 (citation omitted), and "tak[es] account of any particular aggravating or mitigating factors." *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 484, 671 A.2d 463, 481 (1996) (citing *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994)).

 In this case, the hearing judge, based on evidence presented by Respondent, found that Respondent's professional failures "were substantially the result" of his drug abuse. That finding is significant because we "have recognized addiction to drugs as a mitigating factor when the addiction is 'to a substantial degree responsible for the conduct of the attorney.' " *Attorney Grievance Comm'n v. Mandel,* 316 Md. 197,

201, 557 A.2d 1329, 1331 (1989). Indeed, even in cases otherwise warranting disbarment, we have held that " 'compelling extenuating circumstances,' " specifically, "serious and utterly debilitating mental or physical health conditions," including drug addiction, can justify a lesser sanction. *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001). *See also Attorney Grievance Comm'n v. Williams*, 335 Md. 458, 474, 644 A.2d 490, 497 (1994) ("We have said that a sanction less severe than disbarment is not warranted absent evidence that the addiction, to a substantial extent, was the responsible, precipitating and root cause of the misappropriation."). Petitioner took exception to the hearing judge's finding on this matter, maintaining that his finding was "inconsistent" with Respondent's testimony and the testimony of Respondent's expert. We disagree.

■■ As we explained at *supra* page 97, we review the factual findings of a hearing judge under a clearly erroneous standard. In determining whether the findings here meet that standard,

> we recognize that the judge "may elect to pick and chose which evidence to rely upon" and that "an attorney in a disciplinary proceeding need only establish factual matters in defense of an attorney's position by the preponderance of evidence, including whether mitigating circumstances existed at the time of the alleged misconduct." [13]

---

**13.** Pursuant to Md. Rule 16–710(d), factual findings "shall be supported by clear and convincing evidence." As we explained in *Attorney Grievance Comm'n v. James*, 355 Md. 465, 483, 735 A.2d 1027, 1037 (1999), however,

> "[t]he 'clear and convincing' standard of Rule [16–710(d) ] applies to the measure of proof imposed upon the Attorney Grievance Commission in factual determinations *essential to establishing its case against the attorney.* It does not apply to factual matters sought to be established by the attorney in defense of the attorney's position, including whether mitigating circumstances have been shown. As to this, the preponderance of the evidence standard is the applicable measure of proof."

(Alteration in original) (quoting *Attorney Grievance Comm'n v. Bakas*, 322 Md. 603, 606, 589 A.2d 52, 53 (1991)).

*Attorney Grievance Comm'n v. Hines,* 366 Md. 277, 291, 783 A.2d 656, 664 (2001) (quoting *Attorney Grievance Comm'n v. Sheridan,* 357 Md. 1, 17–18, 741 A.2d 1143, 1152 (1999) (citation omitted)).

In rendering his finding regarding Respondent's substance abuse, the hearing judge relied, in part, on the testimony of Dr. Davis (Respondent's therapist and an expert in psychology with a focus on substance abuse) and Mr. Vincent (director of the Lawyer Assistance Program for the Maryland State Bar Association), both of whom emphatically stated that, but for his addiction, Respondent would not have perpetrated the seven instances of professional misconduct admitted to have occurred here. In particular, when asked his opinion "as to whether there was a connection" between Respondent's substance abuse and the misconduct "alleged in Bar Counsel's petition," Dr. Davis described it as "a one-to-one correlation." According to Dr. Davis,

[t]he connection is that once you begin to use these substances and use them in large doses or use them regularly, it begins to create changes in brain function. And the changes that occur in brain function are primarily distractibility so that when you're using these drugs, they have not only an acute effect, that is the effect from the drug that's in the blood stream, but they have a post-acute effect.

... They injure the brain networks and the networks don't work right, and it takes a while for the body to heal and repair these. He gave a history of repeated use of these drugs, of the cocaine to go up, the tranquilizers to come down so he could sleep.

And that kind of up and down creates disruption of the normal function of the brain pathways. But the practical result of that is that you spend an inordinate amount of time just kind of controlling yourself and functioning. And the niceties that we normally look out [sic] that require higher brain function are not working very well. And when you're hung over, you're not functioning very well in other aspects of your life.

. . .

... [H]e was not as attentive on his game under those conditions as he would be normally, and so several of these cases fell through the cracks, and it's perfectly understandable.

In Dr. Davis's opinion, "based on thirty years of experience," "but for the substance abuse, [Respondent] would not have had these problems." "[I]f you take the drug out of it," Dr. Davis explained, Respondent "would have been able to function. When you add that and you incapacitate him physically and mentally with the drugs and the substances and the acute and post-acute effects of the drugs, then not many people could deal with that. And he couldn't."

Likewise, Mr. Vincent testified that "at one time" Respondent's failure to file complaints and prosecute cases "didn't happen in his practice." According to Mr. Vincent, when he "looked for a cause" of Respondent's professional problems, "substance abuse reared its ugly head, and there it was. These things didn't happen earlier." Thus, Respondent's substance abuse was "the only cause" Mr. Vincent pin-pointed for the professional failures.

Based on this testimony, it was not clearly erroneous for the hearing judge to conclude, by a preponderance of the evidence, that Respondent's drug addiction caused his professional failures in the seven personal injury cases. Respondent provided clear and convincing evidence, through the testimony of his witnesses, that he suffered from a drug addiction and that his escalating addiction caused him to violate the MRPC as charged. We overrule Petitioner's exception to the hearing judge's finding on that matter.

We turn to the determination of the appropriate sanction to impose for Respondent's violation of MRPC 1.1, 1.3, 1.4(a), 1.16, and 8.4(d). Citing Standard 4.42 of the ABA Standards for Imposing Lawyer Sanctions, *see supra* note 11, Bar Counsel recommends that Respondent be suspended for two years from the practice of law, that his reinstatement be conditioned upon his submitting proof that each of his clients

in the personal injury matters "have been made whole or have otherwise had their losses satisfied," and that, if reinstated, he continue to be monitored "by the lawyer counseling committee of the Maryland State Bar Association with quarterly reports to Bar Counsel for a period of two years subsequent to" his reinstatement. Respondent, we suppose, urges us to impose a public reprimand, subject to his continued drug therapy, monitoring by the Lawyer Assistance Program for the Maryland State Bar Association, a limitation his practice be confined to criminal law, and supervision by an attorney subject to reporting requirements to Bar Counsel.

 In determining the appropriate sanction in attorney grievance actions, we may consider a number of mitigating factors, including:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Thompson,* 367 Md. at 330, 786 A.2d at 772–73 (quoting *Attorney Grievance Comm'n v. Jaseb,* 364 Md. 464, 481–82, 773 A.2d 516, 526 (2001) (quoting *Glenn,* 341 Md. at 488–89, 671 A.2d at 483 (citations omitted))). *See also* Standard 9.3 of the ABA Standards for Imposing Lawyer Sanctions, *reprinted in ABA/BNA Lawyer's Manual on Professional Conduct,* at 01:839–01:840. In addition, "a less severe sanction than that ordinarily dictated may be appropriate when an attorney is able to establish the existence of compelling circumstances." *Attorney Grievance Comm'n v. Kenney,* 339 Md. 578, 588, 664 A.2d 854, 858 (1995). As we explained at *supra* page 98–99, an attorney's substance abuse may constitute such a compelling circumstance, thereby mitigating the sanction in his or

her case, provided the addiction is found to be the cause of the attorney's misconduct.[11] *See Williams,* 335 Md. at 474, 644 A.2d at 497; *Mandel,* 316 Md. at 201, 557 A.2d at 1331. *See also* Standard 9.32(i) of the ABA Standards for Imposing Lawyer Sanctions, *reprinted in ABA/BNA Lawyer's Manual on Professional Conduct,* at 01:839 (providing that chemical dependency, including drug abuse, is a mitigating factor). On the other hand, there are also aggravating factors which we may consider in our determination of the appropriate sanction, including the existence of "[p]rior disciplinary actions against an attorney" (*Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 396, 794 A.2d 92, 105 (2002) (citing *Myers,* 333 Md. at 447, 635 A.2d at 1318)), the commission of "multiple offenses" (*Monfried,* 368 Md. at 396 n. 10, 794 A.2d at 105 n. 10 (citing Standard 9.22 of the ABA Standards for Imposing Lawyer Sanctions, *reprinted in ABA/BNA Lawyer's Manual on Professional Conduct,* at 01:838–01:839)), and an attorney's "substantial experience in the practice of law." *Id.*

In recent attorney grievance cases involving client neglect, we have imposed a number of different sanctions, ranging from disbarment (*see, e.g., Dunietz,* 368 Md. at 431, 795 A.2d at 712 (disbarring an attorney for client neglect where there were no "circumstances to mitigate or extenuate his neglect" and he demonstrated "continuing disregard for the attorney

---

14. In cases warranting disbarment and those involving "intentional dishonesty, misappropriation .., fraud, stealing, serious criminal conduct and the like," we have limited our consideration of "anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MPRC." *Vanderlinde,* 364 Md. at 413–14, 773 A.2d at 485 (citing *Attorney Grievance Comm'n v. Kenney,* 339 Md. 578, 594, 664 A.2d 854, 862 (1995) ("[A]bsent truly compelling circumstances, alcoholism will not be permitted to mitigate where an attorney commits a violation of ethical or legal rules which would ordinarily warrant disbarment." (Footnote omitted))). *See also Attorney Grievance Comm'n v. Williams,* 335 Md. 458, 474, 644 A.2d 490, 497 (1994) ("We have said that a sanction less severe than disbarment is not warranted absent evidence that the addiction, to a substantial extent, was the responsible, precipitating and root cause of the misappropriation.").

grievance process"); *Wallace,* 368 Md. at 293, 793 A.2d at 545 (disbarring an attorney for client neglect, charging unreasonable fees, failing to account for and return monies, and misrepresentations based on "the volume and severity of the complaints" and his "failure to comply with Bar Counsel's requests")), to indefinite suspension with the right to reapply after a specified period of time (*see, e.g., Attorney Grievance Comm'n v. Mooney,* 359 Md. 56, 97–98, 753 A.2d 17, 39 (2000) (imposing an indefinite suspension with the right to reapply in 90 days on an attorney for failing to appear in court for his client's trial, failing to communicate with his clients, failing to file a motion, failing to subpoena witnesses and obtain medical records, and making a false statement to a juvenile client's parents); *Attorney Grievance Comm'n v. Brugh,* 353 Md. 475, 479, 727 A.2d 913, 915 (1999) (imposing an indefinite suspension with the right to reapply in 60 days on an attorney for neglecting and failing to communicate with three clients) (citing *Attorney Grievance Comm'n v. David,* 331 Md. 317, 323–24, 628 A.2d 178, 181 (1993) (finding that an indefinite suspension with the right to reapply in 6 months was an appropriate sanction for client neglect in a number of cases where the attorney failed to cooperate with Bar Counsel and, in one case, misappropriated funds))), to a public reprimand (*see, e.g., Attorney Grievance Comm'n v. Tolar,* 357 Md. 569, 584–85, 745 A.2d 1045, 1053–54 (2000) (issuing a public reprimand for an attorney's client neglect and failure to communicate where the attorney was " 'well respected' " and had remorse for her misconduct)). The application of varying sanctions in cases involving client neglect can be explained by this Court's appraisal of the mitigating and aggravating factors in the individual cases. Generally, if there are a number of mitigating factors present, or an absence of aggravating factors, we are apt to find that a less severe sanction will serve our stated purpose of protecting the public. *See, e.g., Tolar,* 357 Md. at 585, 745 A.2d at 1053–54 (citing the attorney's "remorse for her misconduct" and holding that a public reprimand would "serve the purpose of protecting the public just as well as a short suspension"); *Brugh,* 353 Md. at 479,

727 A.2d at 915 (finding that an indefinite suspension with the right to reapply in one year was not merited where the attorney did not fail to cooperate with Bar Counsel and did not misappropriate funds). In cases involving the presence of highly aggravating factors, for instance where an attorney avoids, ignores, or does not cooperate with Bar Counsel or misappropriates client funds, we are more inclined to impose a more severe sanction than in those cases in which, for example, the attorney was cooperative with Bar Counsel throughout the attorney grievance process or did not misappropriate funds. *Compare Dunietz,* 368 Md. at 430–31, 795 A.2d at 711–12; *Wallace,* 368 Md. at 293, 793 A.2d at 545 *with Brugh,* 353 Md. at 479, 727 A.2d at 915. *See also Brugh,* 353 Md. at 479, 727 A.2d at 915 (explaining that in *David,* 331 Md. 317, 628 A.2d 178 (1993), a harsher sanction was imposed because "there were two other aggravating circumstances," specifically, "the lawyer failed to cooperate with Bar Counsel, and, in one case, he received funds belonging to the client and failed to remit them in a timely manner").

There are both mitigating and aggravating factors in this case. In Respondent's favor, there is no indication that he acted with a dishonest or selfish motive, he admittedly was suffering from personal problems at the time of his violations, and he has displayed a great deal of remorse for his actions. In addition, Respondent has maintained a cooperative attitude throughout these proceedings, evidenced, in part, by his voluntarily providing to Bar Counsel the names of three additional clients whose cases he neglected, and has indicated a desire to remediate the consequences of his neglect.[15] Upon accepting

---

**15.** Prior to the evidentiary hearing in this case, Respondent, through his attorney, notified the clients harmed by his neglect of the status of their cases, and requested that the individuals "consult with another attorney regarding" their cases and "have that attorney contact [Respondent] in hopes of working out a resolution." In his testimony at the evidentiary hearing, Respondent agreed that his "clients have all been damaged by [his] misdeeds," and indicated that he felt "horrible about them" and hoped he could "resolve these matters with them." At the time of oral argument, Respondent had been contacted by three

the hearing judge's findings regarding Respondent's drug addiction, *see supra* pages 100–101, the scope of Respondent's sanction is also mitigated by the existence of his addiction, which was found to have caused his professional failures, and by his current effort to seek treatment for his addiction. We have "long recognized . . . that rehabilitative efforts by an attorney may mitigate the severity of misconduct not warranting disbarment." *Attorney Grievance Comm'n v. Gilbert,* 356 Md. 249, 256, 739 A.2d 1, 5 (1999) (citing *Kenney,* 339 Md. at 588, 664 A.2d at 858–59). In this case, Respondent has demonstrated an intention to rehabilitate himself and is participating in a recovery program.[16]

Regarding aggravating factors, the record reveals that on 1 September 1999, Respondent received a private reprimand for failing to expunge two criminal records. In addition, Respondent has "substantial experience in the practice of law," *Monfried,* 368 Md. at 396 n. 10, 794 A.2d at 105 n. 10 (citation omitted), and the violations at issue here involve multiple

---

of his former clients and was involved in lawsuits brought by two of those clients as a result of his professional malfeasance.

16. The record and the findings of the hearing judge reveal that at the time of the evidentiary hearing, Respondent was under the weekly supervision of Dr. Davis, whom he met with "to insure that he not use illegal drugs," was regularly attending therapy sessions, and was attending several meetings a week of Narcotics Anonymous. The hearing judge, in describing Respondent's rehabilitative efforts, explained that both Dr. Davis and Mr. Vincent "testified that they had worked extensively with Respondent and that he had 'embraced the recovery program.'" In addition, the hearing judge found that

subsequent to his treatment for drug addiction, it was established that Respondent has resumed his role as a highly competent practitioner in the courts of this State. He is clearly committed to remain free of drugs. Both expert witnesses in the case testified quite convincingly that, to the extent to which anyone can be said to have an excellent chance of recovery from drug abuse, such conclusion can be reached with respect to Respondent.

At oral argument, neither Petitioner or Respondent indicated that Respondent's treatment program had been altered or discontinued. Our consideration of his rehabilitation as a mitigating factor, therefore, assumes that Respondent continues participating actively in pursuing his recovery.

offenses, specifically the violation of five of the MRPC in his representation of six clients.

Considering all of the circumstances in this case, we conclude that the appropriate sanction to be imposed in this matter is an indefinite suspension with the right to reapply in thirty (30) days. Due to the nature of Respondent's offenses, his admitted inability to perform his professional duties, and our obligation to impose a sanction which will "protect the public" and "demonstrate[ ] to members of this legal profession the type of conduct that will not be tolerated," *Dunietz,* 368 Md. at 428, 795 A.2d at 711 (citation omitted), we are unwilling to accept Respondent's recommended sanction of a public reprimand. At the same time, however, "[w]e are not unmindful of the benefits of returning a rehabilitated attorney to the productive practice of law," and recognize that we "could be doing a disservice by forever barring" Respondent from "returning to the practice of law" or by prolonging his absence to such an extent that it would be difficult for him to return. *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 365, 624 A.2d 503, 514 (1993).

There was evidence adduced as to Respondent's long and otherwise reputable career.[17] Coupled with his desire to fulfill his obligations to his former clients, we can see also some benefit to the potential of his return as a rehabilitated attorney. Our sanction, therefore, takes cognizance of the particular circumstances in this case, but also gives due regard to our obligation to protect the public, by ensuring that Respondent does not reenter the practice of law until he demonstrates and provides relative assurance that he is capable of doing so successfully. In seeking reinstatement, attention should be given to the matters underlying the various conditions proposed by the parties in their sanction recommendations here.

---

17. Members of the Bar and the judiciary submitted letters on Respondent's behalf to the Attorney Grievance Commission and described Respondent as an "asset to the legal practice," a "fine lawyer," a "honorable member of the Bar," and an "effective," "responsible," "honest," and "competent" attorney.

108

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CRAIG STEVEN GARFIELD; RESPONDENT'S SUS-PENSION SHALL COMMENCE THIRTY DAYS FROM THE FILING OF THIS OPINION.